# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

February 19, 2021

To:   Shig Yasunaga
      UNITED STATES DISTRICT COURT
      Central District of Illinois
      U.S. Courthouse
      Urbana , IL 61802-3369

| No. 19-2453 | GARY HATTER,<br>Plaintiff - Appellant<br><br>v.<br><br>GLORIA WILLIAMS, et al.,<br>Defendants - Appellees |
|---|---|
| Originating Case Information: | |
| District Court No: 2:17-cv-02141-CSB-EIL<br>Central District of Illinois<br>District Judge Colin S. Bruce | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:        No record to be returned

NOTE TO COUNSEL:
If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

Date:                                          Received by:

2/19/2021                                      s/D. Sjoken

___         _____              _____                              _____

form name: c7_Mandate(form ID: 135)

**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**



Submitted January 27, 2021[*]
Decided January 28, 2021

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

| | |
|---|---|
| No. 19-2453 | |
| GARY HATTER, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| v. | No. 17-CV-2141 |
| GLORIA WILLIAMS, *et al.*, *Defendants-Appellees*. | Colin S. Bruce, *Judge*. |

**O R D E R**

After determining that Gary Hatter had misrepresented his financial assets, the Housing Authority of Champaign County, Illinois, stopped his rental assistance. Hatter then sued the agency and three of its employees,[1] asserting that they discriminated and retaliated against him based on his disability and race as well as deprived him of due

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

[1] Because no party moved for substitution after 90 days of counsel's suggestion of death, defendant Medra Seals is no longer party to the suit. *See* FED. R. CIV. P. 25(a)(1).

process. The district court entered summary judgment for the defendants. Because Hatter marshaled no evidence that the alleged violations occurred, we affirm.

At the outset, we address Hatter's concern that the district court limited the summary-judgment record to the defendants' evidence. Hatter's submissions, in which he disputed the defendants' factual account with legal arguments but did not cite admissible evidence (though he appended dozens of documents), did not comply with the local rules. *See* C.D. ILL. R. 7.1(D)(2)(b)(5). Although Hatter was pro se, the district court strictly enforced its rules as it is entitled to do. *See McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 786–87 (7th Cir. 2019). We thus recount the facts as presented by the defendants, still viewing them in the light most favorable to Hatter. *Id.* at 787.

Hatter, who lives alone and is disabled from a decades-old back injury, obtained rental assistance under Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f, and rented a two-bedroom unit from 1993 to 2015. In May 2015, the Housing Authority of Champaign County told him that he had to move to a one-bedroom apartment to match his one-person voucher. Hatter then requested a reasonable accommodation, asserting that he needed the extra room for his physical-therapy equipment. The agency's assistant director, Gloria Williams, waited to address this request until Hatter completed the required annual recertification of his income.

At his meeting for recertification in late June, Hatter signed a form verifying, in relevant part, that he "does not own or have any interest in real estate" and signed a release authorizing the agency to verify his representations. Hatter alleges that Williams forced him to sign a blank income-verification form that she later filled out with inaccurate information. But the information matches the forms he submitted in 2010, 2011, and 2013, and he does not dispute the accuracy of that paperwork.

That week, Williams approved Hatter's request for an accommodation to remain in his two-bedroom unit and recertified him with the program. Around the same time, however, she requested Hatter's credit report based on an anonymous tip that he was not living in his subsidized apartment. The report exposed that Hatter had a mortgage on a property in Indiana. Further investigation revealed that Hatter had acquired the property in 1997 and obtained the mortgage in 2004. The agency then notified Hatter that it intended to stop his subsidy for "fraud and abuse." He requested a hearing and provided the agency with a letter from August 2004, in which he stated that he had taken out the mortgage for his son and that he was "[i]n no way" associated with the property's ownership. He insisted that he had given the letter to "a female employee" of the agency in 2005, but the housing authority did not have a copy of the letter in his file.

At the informal hearing on August 3, 2015, Hatter maintained that he did not own the Indiana property and that a caseworker from the agency had approved the arrangement based on his letter. Edward Bland, the executive director, decided to cancel Hatter's voucher, explaining that he had committed fraud by not divulging that he had an ownership interest in real estate and that his son paid his mortgage (a form of income). Hatter appealed, entitling him to a formal hearing, and, around the same time, he conveyed any interest in the Indiana property to his son with a quitclaim deed.

Because Bland received notification that Hatter had also contacted the federal Department of Housing and Urban Development (HUD), Bland told Hatter that the housing authority would wait to schedule the formal hearing until it was resolved. A month later, however, HUD had not received a timely complaint from Hatter, so it told the housing authority it could proceed. Bland scheduled the hearing for October and notified Hatter by regular and registered mail two weeks in advance. (Bland had previously told Hatter to expect notice in the mail.) But Hatter did not receive the notice in time or attend the hearing because he was undergoing medical treatment in Texas; the notice was at his home when he returned. (He maintains that he told Williams in September that he would be leaving for months.) The hearing proceeded anyway, and the hearing officer affirmed the revocation, mailed the decision to Hatter, and stopped his subsidy as of November. The following month, the agency received notice that Hatter had filed the HUD complaint; that proceeding ended with a "no cause" determination.

Hatter then filed this lawsuit, generally asserting claims of disability and racial discrimination and retaliation under the Fair Housing Act and the Americans with Disabilities Act, plus denial of due process. *See* 42 U.S.C. §§ 1983, 3604, 3617, 12132. The defendants moved for summary judgment, and the district court granted their motions. The court ruled that the record did not support an inference that any defendant discriminated or retaliated against Hatter. As for his due-process claim, it continued, Hatter could not seek relief in federal court because he had state-law remedies.

On appeal, Hatter challenges the entry of summary judgment, which we review de novo. *Knudtson v. Cnty. of Trempealeau*, 982 F.3d 519, 525 (7th Cir. 2020). He primarily argues that he committed no fraud because his answers were truthful, and it was legal for him to take out a loan to help his son buy a house. He repeatedly asserts that his 2004 letter refutes his ownership of the Indiana property and that the agency fabricated his 2015 income-verification paperwork. He also presents new arguments and evidence about purported flaws in the investigation and property valuation; we cannot consider

No. 19-2453 Page 4

those for the first time on appeal. *See Henderson v. Wilkie*, 966 F.3d 530, 539 (7th Cir. 2020). Further, even reading Hatter's brief generously, we discern no developed argument that the agency revoked his subsidy because of his race (white) or disability, so we do not address those claims. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001).

Therefore, we first consider whether Hatter raised a genuine dispute of material fact about whether the housing authority discriminated against him based on disability by denying him a reasonable accommodation. The problem for Hatter is that the record shows that he eventually received the exact accommodation he asked for. Even if Williams initially balked at the request (the record lacks admissible evidence that she did), accommodation requests simply open an "interactive process." *Scheidler v. Indiana*, 914 F.3d 535, 542 (7th Cir. 2019). This process ended in Hatter's favor, so he cannot show that the agency "denied" his request, as his theory requires. *See id.* at 541–42.

But, Hatter contends, the agency then revoked his subsidy just months later in retaliation for requesting an accommodation. He also asserts that his initiation of a fair-housing complaint against Williams and Bland resulted in retaliation when the agency scheduled a formal hearing that he could not attend. We agree with the district court that the record does not permit a reasonable inference of retaliation based on Hatter's protected activity. *See Riley v. City of Kokomo*, 909 F.3d 182, 191–92 (7th Cir. 2018).

Hatter emphasizes that Williams started her investigation only after he asked for and received an accommodation, but timing alone cannot support retaliatory motive. *See Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008). And the timing here is not suspicious when the unrebutted evidence shows that Williams requested Hatter's credit report based on a tip that he was not living in Illinois. Hatter lacks evidence to support his contention that his accommodation request—which was granted—prompted the investigation or the ultimate revocation. *See id.* As for the contention that Hatter's HUD complaint led to his removal from the program, the evidence is once again absent. As the record shows, Hatter's credit report prompted an investigation, and after two hearings, the agency ended his assistance for violating program rules. Further, no evidence supports Hatter's belief that the agency scheduled his formal hearing in bad faith: Bland set the hearing after receiving permission from HUD, and Hatter did not properly support his assertion that anyone at the housing authority knew that he was in Texas at the time.

Hatter appears to contend, however, that either discriminatory or retaliatory motive can be inferred because the agency had no valid ground for discharging him

from the voucher program. But the agency stopped his housing assistance for his repeated failure to disclose that he had an interest in the Indiana property. *See* 24 C.F.R. § 982.551(b), (k). This is not the place to argue that the decision was erroneous. Though he attempts to undermine the conclusion that he ever misrepresented having an interest in a property, a pretextual reason is a false one, not an incorrect or unfair one. *See McCann v. Badger Mining Corp.*, 965 F.3d 578, 589 (7th Cir. 2020). And Hatter has no evidence that anyone at the agency had a different motive than what he was told.

Last, Hatter argues that housing authority employees deprived him of due process because he did not receive proper notice of the formal hearing. While the district court rejected this argument because Hatter had state remedies available to him, we affirm on a different ground: Hatter received due process. There is no evidence in the record that the agency denied Hatter minimum constitutional safeguards before ending his housing assistance. It mailed him proper notice of the hearings, provided a written explanation of its decisions, and gave him the opportunity to present his case twice. *See* 24 C.F.R. § 982.555; *Goldberg v. Kelly*, 397 U.S. 254, 267–70 (1970). That Hatter did not receive the written notice of the appellate hearing cannot be attributed to the agency. Again, Hatter has no evidence that Williams knew that he was living in Texas but not forwarding mail there. And his expectation that the hearing would not be scheduled until later does not call into question the adequacy of the notice. The Constitution requires only that notice is "reasonably calculated," not that it "succeed." *Ho v. Donovan*, 569 F.3d 677, 680 (7th Cir. 2009) (citing cases). There is no dispute that Bland mailed notice to his current, correct address well in advance of the hearing.

We have reviewed Hatter's other arguments, and none has merit.

AFFIRMED

## UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

### FINAL JUDGMENT

January 28, 2021

Before:  MICHAEL B. BRENNAN, Circuit Judge
MICHAEL Y. SCUDDER, Circuit Judge
AMY J. ST. EVE, Circuit Judge

CERTIFIED COPY

| | |
|---|---|
| No. 19-2453 | GARY HATTER,<br>Plaintiff - Appellant<br><br>v.<br><br>GLORIA WILLIAMS, et al.,<br>Defendants - Appellees |
| **Originating Case Information:** | |
| District Court No: 2:17-cv-02141-CSB-EIL<br>Central District of Illinois<br>District Judge Colin S. Bruce | |

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)